UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMIE JAMES CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 03 C 3852 |
| | ) |
| KENNETH R. BRILEY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motion of Defendants Donald Snyder, Kenneth Briley, Marilyn Coutee, Joseph Quijano, Robert Griffin, Darrin Hunter, James Tsoulos, Alex Jones, Robert Catchings, and Tracey Engelson (collectively referred to as the "Defendants") for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the motion is granted.

### BACKGROUND

Defendants are current and former employees of the Illinois Department of Corrections ("IDOC"). During the relevant time period, Defendant Snyder was the Director of IDOC and all remaining Defendants were employed by IDOC at the Stateville Correctional Center in various capacities. Plaintiff James Clark ("Clark")

was an inmate at the Stateville Correctional Center. In accordance with his Rastafarian faith, he maintained his hair in dreadlocks, a hairstyle formed by uncut and uncombed hair. On three separate occasions beginning on October 1, 2002, Defendants informed Clark that his hairstyle violated Stateville's grooming policy and ordered him to either voluntarily remove his hairstyle or have it removed by the facility barber. Clark claimed that it was against his religious beliefs to cut his hair and refused to do so. As a result of disobeying each of the three direct orders, Clark was disciplined.

Following Clark's refusal to have his hair cut, Defendant Jones, Assistant Warden of Operations, visited Clark and determined that his hair posed a safety and security risk because it could serve as a hiding place for weapons, drugs, and drug paraphernalia and could not be thoroughly searched without posing undue risk to staff. IDOC Administrative Directive 05.03.160 allowed for the enforcement of an "individual grooming policy" for inmates who maintained their hair in a way that posed a health, sanitation, or security risk. Both the statewide and institutional directives defined a security risk as any hairstyle that signified a "security threat group," impeded a thorough search for contraband, or created a risk that staff members conducting the search could be injured by hidden contraband or would not be able to detect the contraband. In addition, the procedures called for three consecutive verbal and written orders and a 48 hour compliance period after each order to give the inmate sufficient

time to voluntarily comply with the grooming policy. If after the final order and compliance period the inmate had not voluntarily removed his hairstyle, the "Duty Administrative Officer" could order the hairstyle to be removed by a tactical team. The Warden's Bulletin also stated that inmates "who refuse to comply with an order to either undo the hairstyle or to submit to a haircut may be subject to disciplinary action and, if necessary, forcibly changing the hairstyle."

Defendants provided Clark with both verbal and written notice of the Warden's Bulletin numerous times but Clark refused to allow for his hair to be cut. Clark asserted that his hair was not a security risk because he had worn his hair in dreadlocks for the preceding two and one half years and had been through multiple searches during that time without incident. Nevertheless, on October 7, 2002, a tactical team handcuffed and shackled Clark and forcibly cut his hair, pursuant to IDOC Administrative Directive 05.03.160.

Clark filed the present suit, pursuant to 42 U.S.C. § 1983, alleging that Defendants' implementation and enforcement of the grooming policy violated his First Amendment right to the free exercise of religion and his Fourteenth Amendment rights to equal protection. He also sets forth a claim of cruel and unusual punishment under the Eighth Amendment. He is suing Defendants both in their official and individual capacities and seeks compensatory and punitive damages and injunctive relief.

Defendants have moved for summary judgment on all claims. We address the parties' arguments in turn.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant,"

Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record-only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). With these principles in mind, we turn to the present motion.

## DISCUSSION

To maintain a § 1983 action, Clark must establish that Defendants, while acting under color of state law, deprived him of a right secured by the Constitution and laws of the United States. See West v. Atkins, 487 U.S. 42, 48 (1988). Defendants were all employed by IDOC at the relevant time and thus their actions in implementing and enforcing the grooming policy were under color of state law. We accordingly move on to the substantive issues that are presently before us.

**I. First Amendment / Religious Land Use and Institutionalized Persons Act**

Clark first alleges that Defendants infringed on his First Amendment right to freely exercise his religion when they forced him to comply with a grooming policy that violated his religious beliefs. In recent years, the Religious Land Use and Institutionalized Persons Act ("RLUIPA") has provided inmates with even greater protection of their religious rights than that afforded by the First Amendment. Although Clark did not raise the issue of RLUIPA in his complaint, we are mindful of

the fact that he is a *pro se* litigant and interpret his complaint liberally to include such a claim. RLUIPA provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section [1997 of this article], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> > (1) is in furtherance of a compelling government interest; and
> > (2) is the least restrictive means of furthering that governmental interest.

42 U.S.C. § 2000cc-1(a) (2000).

Defendants concede that forcing Clark to submit to a haircut placed a substantial burden on his free exercise of religion and do not challenge the sincerity of his religious beliefs. It is also well established that prison safety and security are compelling state interests. See Cutter v. Wilkinson, 544 U.S. ___, 125 S. Ct. 2113, 2123-24 (May 31, 2005). Thus, we turn directly to the two remaining issues, which Defendants bear the burden of demonstrating: whether forcing Clark to submit to a haircut was in furtherance of safety and security, and whether the forced haircut was the least restrictive means of achieving safety and security at Stateville.

*A. In Furtherance of a Compelling State Interest*

Defendants contend that Clark's hairstyle and disciplinary history presented exactly the type of safety and security risk for which the directives and warden's

bulletin were enacted to prevent. Recently, the Supreme Court, while upholding the constitutionality of RLUIPA, noted that religious accommodations cannot override an institution's other significant interests. Cutter, 125 S. Ct. at 2122. RLUIPA is to be applied "in an appropriately balanced way, with particular sensitivity to security concerns." Id. at 2123. Further, the Cutter Court stressed that deference is due to institutional officials' experience and expertise in the area of prison security. Id. at 2123-24. Under the Religious Freedom Restoration Act's ("RFRA") analogous compelling interest standard, prison hair length regulations have been routinely found to be related to security considerations. See Diaz v. Collins, 114 F.3d 69, 73 (5th Cir. 1997); Harris v. Chapman, 97 F.3d 499, 504 (11th Cir. 1996); Hamilton v. Schriro, 74 F.3d 1545, 1555 (8th Cir. 1996). In applying RLUIPA's compelling interest standard to the present facts, we find that Defendants have sufficiently demonstrated that the enforcement of the grooming policy on Clark was in furtherance of safety and security.

In support of their motion, Defendants provide an affidavit by Alex Jones, Assistant Warden of Operations, who determined that Clark's hairstyle was a safety and security risk and ordered its removal. Jones' determination was based on the fact that Clark's hair could serve as a hiding place for weapons, drugs, or drug paraphernalia, and could not be thoroughly searched without presenting a danger to staff. In addition, Defendants cite some of Clark's past violations while incarcerated

with IDOC to illustrate not only the necessity of grooming policy in a prison such as Stateville, but also its enforcement on Clark in particular. See 42 U.S.C. § 2000cc-1(a) (stating that the government has to demonstrate that "the imposition of the burden on that person" was in furtherance of a compelling government interest). Clark's prior conduct included testing positive for drugs less than a year before the forced haircut, concealing a "dagger-like" weapon on his person, concealing his identity, and health and safety violations.

Clark counters that he maintained his hair in dreadlocks for the preceding two and one half years (or approximately since April 2000) and that his hair had been searched multiple times during this period without being considered a security risk. This argument, however, does not take into consideration the effective date of the warden's bulletin. As Defendant Jones' affidavit points out, the warden's bulletin in effect at the time of the forced haircut was implemented in May 2002. In addition, it is reasonable to infer that training staff on the proper procedures and enforcing the policy on the large number of inmates at Stateville would have taken some time.

Clark also asks the court for a continuance to allow time for discovery of photographs and a video-tape of his hairstyle prior to the haircut so that the court can better evaluate whether his hairstyle constituted a security risk. However, we find such information unnecessary for our present determination. While we cannot simply accept

Defendants' assessment of the circumstances, we also cannot substitute our judgment for that of seasoned prison officials on what constitutes a prison security risk. Instead, we review the facts and give deference to Defendants' expertise where it is due. Based on the above information, we find that the enforcement of the grooming policy on Clark was in furtherance of the compelling state interests of safety and security.

### B. *Least Restrictive Means*

Defendants bear the burden of establishing that the forced haircut was the least restrictive means of achieving safety and security. Such a determination requires Defendants "to demonstrate that no alternative forms of regulation would combat such abuses without infringing First Amendment rights." United States v. Hardman, 297 F.3d 1116, 1130 (10th Cir. 2002) (quoting Sherbert v. Verner, 374 U.S. 398, 407 (1963)). Clark claims that in searches conducted prior to the forced haircut, he ran his fingers through his hair in the presence of correctional officers, and that officers waved metal detectors over his hair if they believed that he was concealing a metal object. He contends that those searches were sufficient to alleviate any risk of hidden contraband in his hair. However, metal detectors would not alleviate the risk of non-metal weapons and paraphernalia, and certainly not drugs. Further, his dreadlocked hair by its very nature would have prevented Clark from freely running his fingers through his hair. He may have been able to run his fingers through locks of his hair, but that would

not have necessarily detected contraband hidden within the locks. Moreover, such searches could not adequately address the constant nature of the risk. See Hamilton, 74 F.3d at 1555.

Clark also alleges that Defendants did not use the least restrictive means to further security because they removed all of his dreadlocks, rather than just the amount that was not in compliance. He bases his argument on the grooming policy addressed in Reed v. Faulkner, 842 F.2d 960, 961 (7th Cir. 1988), that required prison officials to only remove several inches of a Rastafarian inmate's shoulder-length dreadlocks. However, that case dealt with another prison's grooming policy, which was based on that prison's particular security concerns. Also, we do not see how this argument supports Clark's free exercise claim because his Rastafarian faith prohibits any cutting of his hair, even several inches. This is further evidenced by that the fact that the Rastafarian inmate in Reed claimed a similar First Amendment violation based on the removal of the several inches of hair. 842 F.2d at 961. More importantly, Defendants never indicated that only Clark's hair length posed a security risk, but found that his overall hairstyle was a security risk. Again, we must give due deference to the defendant prison officials' experience and expertise in this matter. See Hamilton, 74 F.3d at 1555.

For the foregoing reasons, we find that forcing Clark to submit to a haircut was the least restrictive means of meeting the safety and security concerns at Stateville. Because Defendants' grooming policy survived RLUIPA's strict scrutiny test, the policy inevitably passes the First Amendment test as well. Defendants' motion for summary judgment with regard to the RLUIPA and First Amendment claim is granted.

**II. Fourteenth Amendment Equal Protection Claim**

To establish liability for a violation of the Equal Protection clause pursuant to § 1983, Clark must show: (1) that Defendants acted "with nefarious discriminatory purpose," and (2) that they "discriminated against him based on his membership in a definable class." Nabozny v. Podlesny, 92 F.3d 446, 453 (7th Cir. 1996). Discriminatory purpose implies that "a decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." Id. (quoting Shango v. Jurich, 681 F.2d 1091 (7th Cir. 1982).

Clark alleges that the grooming policy was "being used as an instrument to discriminate against mainly those of African practices within Religion and Culture." (Pl.'s Compl. ¶ 9). Based on this description, we find the "identifiable group" to be Rastafarian inmates as well as other African American inmates whose religious beliefs forbid the cutting of their hair.

Clark draws attention to the fact that several correctional officers wore their hair in dreadlocks, braids, and otherwise non-compliant hairstyles, but were searched with no extra precaution when they entered the institution. His comparison fails for many reasons, the foremost being that the correctional officers are free citizens and not subject to the inmate grooming policy at Stateville. See also Shaw v. Murphy, 532 U.S. 223, 229 (2001) (noting that while prisoners retain certain constitutional rights, they are more limited in scope than those held by the average citizen).

The Defendants have set forth that the grooming policy at Stateville applied to all inmates equally and that Clark's hair was cut because it represented a threat to the safety and security of the institution. Clark has failed to establish that he was treated differently from similarly situated inmates or that there was any discriminatory intent behind the actions taken by the Defendants. Clark admitted Defendants' statement of facts 54 and 55. Statement 55 asserts that it is an undisputed fact that Clark knows of no other inmates who had their hair cut at Stateville, other than those who agreed to submit voluntarily to a hair cut. Thus, Clark cannot identify a single inmate who was allowed to keep a hairstyle that was in violation of the grooming policy.

Accordingly, because Clark failed to establish that Defendants acted with a discriminatory purpose, his Equal Protection claim fails. Summary judgment is granted for Defendants on the Equal Protection claim.

**III. Eighth Amendment Cruel and Unusual Punishment Claim**

Even though Clark does not specifically state a claim under the Eighth Amendment, he alludes to claims of excessive force in parts of his complaint and also states that "the mental anguish suffered as a result of the actions of each official in their own capacity enlightened the liability" to a form of cruel and unusual punishment. (Pl.'s Compl., Prayer for Relief ¶ 2). However, Clark's cryptic description of the "actions of each official" sheds little light on his specific grievance. It is unclear whether Clark's Eighth Amendment allegations are against the tactical team for excessive force, or against Defendants for their roles in implementing and enforcing the grooming policy. Either way, he cannot sustain an Eighth Amendment claim.

During his deposition, Clark complains of injuries to his wrists and ankles from the handcuffs and shackles that had been placed on him during the haircut. However, Clark never sought medical attention or reported any injuries after the haircut, and now seeks relief only for his "mental anguish." (Def.'s Br. p. 18). More importantly, Clark has not named any member of the tactical team that extracted him from his cell and forcibly cut his hair as a defendant in this case, and none of the named defendants took part in the forced haircut. Although Defendant Hunter was present to receive Clark's hair after it had been removed, Clark has not alleged that he participated or was involved in the removal of his hair. A defendant cannot be held liable under § 1983

unless he or she personally participated or was involved in the alleged constitutional violation. Del Raine v. Williford, 32 F.3d 1024, 1047 (7th Cir. 1994). Also, the doctrine of *respondeat superior* cannot be a basis for liability under § 1983. Id. Thus, any supervisory role the Defendants may have played in the forced haircut, without more, is insufficient to establish an Eighth Amendment violation. Summary judgment is granted for Defendants on the Eighth Amendment claim.

Because we grant judgment for Defendants on all claims, we need not address whether Clark's official-capacity claims for money damages are barred by the Eleventh Amendment and whether he is entitled to injunctive relief.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated:  September 26, 2005